# **EXHIBIT J**

# BRACEWELL

January 2, 2026

**VIA EMAIL, CERTIFIED MAIL, AND FEDERAL EXPRESS**

| | |
|---|---|
| Secretary Doug Burgum<br>U.S. Department of the Interior<br>1849 C Street, NW<br>Washington, DC 20240<br>exsec_exsec@ios.doi.gov | Pamela Bondi, Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Matthew Giacona, Acting Director<br>Bureau of Ocean Energy Management<br>1849 C Street, NW<br>Washington, DC 20240<br>matthew.giacona@boem.gov | The Honorable Kathy Hochul<br>Governor of New York State<br>New York State Capitol Building<br>Albany, NY 12224<br><br>Letitia James, Attorney General<br>New York State<br>New York State Capitol Building<br>Albany, NY 12224 |

Re:   Notice of Intent to Sue under the Outer Continental Shelf Lands Act for Violations Relating to Empire Leaseholder LLC and Empire Offshore Wind LLC

Dear Secretary Burgum, Attorney General Bondi, Acting Director Giacona, Governor Hochul, and Attorney General James:

On behalf of Empire Leaseholder LLC and Empire Offshore Wind LLC (together, "Empire Wind"), we are writing to inform the United States Department of the Interior ("Interior") and the Bureau of Ocean Energy Management ("BOEM") that the BOEM Director's Order, dated December 22, 2025, requiring that Empire Wind suspend all ongoing activities related to the Empire Wind 1 Project (the "Project") on the Outer Continental Shelf for the next 90 days for "reasons of national security ("Suspension Order") (attached hereto as Exhibit A) violates the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the United States Constitution.

The Suspension Order is arbitrary and capricious, unlawful, and cannot stand.  If Interior and BOEM (collectively, "United States") fail to withdraw the Suspension Order immediately, Empire Wind intends to pursue litigation to resolve this matter.  This letter is provided pursuant to the 60-day notice requirement of the citizen suit provision of the Outer Continental Shelf Lands Act ("OCSLA"), to the extent such notice is deemed necessary by a court.  *See* 43 U.S.C. § 1349(a)(2)(A).  The action may be brought

**Ann D. Navaro**
Partner

T:+1.202.828.5811       F: +1.800.404.3970
2001 M Street NW, Suite 900, Washington,DC 20036-3310
ann.navaro@bracewell.com       bracewell.com

AUSTIN   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   PARIS   SAN ANTONIO   SEATTLE   WASHINGTON, DC

immediately after notification because "the alleged violation constitutes an imminent threat to the public health or safety or would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3).

## I. BACKGROUND

Empire Wind is developing the Empire Wind Project, a commercial-scale offshore wind project being constructed offshore New York. Empire Leaseholder LLC is the lessee to Lease OCS-A 0512 ("Lease") issued by BOEM, located on the Outer Continental Shelf ("OCS") offshore Brooklyn, New York. The Project is being developed in two phases: Empire Wind 1 ("EW 1") and Empire Wind 2 ("EW 2"). EW 1 will be located in the western portion of Empire Wind's lease area issued by BOEM and will have a generating capacity of 810 MW. In-water construction of EW 1 has been ongoing since July 2024.

Empire Wind had received all necessary permits to construct the Project, including the COP Approval issued by BOEM in February 2024. Empire Wind has expended billions of dollars to develop, permit, and construct the Project. In January 2025, Empire Wind secured a project financing package of over $3 billion for the construction of EW 1. The construction and operation of Empire Wind has created and will continue to create thousands of jobs, with hundreds of employees actively engaged on Empire Wind work sites.

Nearly two years after authorizing the Project following a comprehensive review of national security impacts, the United States' Suspension Order declares that the Project may not proceed based on unexplained "reasons of national security" and classified information from the Department of War ("DoW") that has not been disclosed to Empire Wind. This followed a prior, unlawful Stop Work Order that was issued by BOEM to Empire in April 2025 ordering it to "halt all ongoing activities related to the Empire Wind Project on the outer continental shelf to allow time for it to address feedback it has received…about the environmental analyses for that project." This prior Stop Work Order was amended on May 19, 2025, allowing construction to resume. Empire Wind incurred approximately $200 million in costs while construction was suspended by the April 2025 Stop Work Order.

As instructed by the Suspension Order, Empire Wind has halted all OCS activities that are not necessary to respond to emergency situations and/or to prevent impacts to health, safety, and the environment. It is critical that Empire Wind continue the construction activities that have been stopped by the Suspension Order, particularly in light of the month-long delay that resulted from the United States' issuance of a similar Stop Work Order issued by BOEM in April 2025.

## II. THE SUSPENSION ORDER IS CONTRARY TO LAW IN VIOLATION OF OCSLA AND THE APA, 43 U.S.C. § 1341(c), 5 U.S.C. § 706(2)(A).

The Suspension Order violates OCSLA, as the United States lacks authority to take this action under OCSLA. 43 U.S.C. § 1341(c).[1] The Suspension Order relies on Section 585.417(b) of BOEM's regulations,

---

[1] For the same reasons, the Suspension Order is contrary to law in violation of the APA. 5 U.S.C. § 706(2)(A). OCSLA's citizen suit provision (43 U.S.C. § 1349(a)) and the APA (5 U.S.C. § 706(2)(A)) authorize courts to set aside actions that violate OCSLA.

# BRACEWELL

January 2, 2026
Page 3

which authorizes BOEM to suspend a lease "[w]hen the suspension is necessary for reasons of national security or defense." 30 C.F.R. § 585.417(b). However, Section 12(c) of OCSLA, 43 U.S.C. § 1341(c), provides Interior its only authority to suspend "operations under any lease" for national security reasons and only if two conditions are satisfied: the DoW (formerly known as the Department of Defense (DoD)) must make a "recommendation" and the country must be in a "state of war or national emergency declared by the Congress or the President of the United States…." Section 12(d) also allows the DoD, with the President's approval, to designate OCS areas necessary for national defense as restricted from development. 43 U.S.C. § 1341(d). The limitations of Section 12 are reflected in the terms of Empire Wind's lease, which provides that "[BOEM] reserves the right to suspend [Empire Wind's] operations in accordance with the national security and defense provisions of Section 12 of the Act and applicable regulations, provided that compensation must be paid to the Lessee as provided by 43 U.S.C. § 1341(c) and (d)."

BOEM has not established that the Secretary of War has recommended that BOEM suspend operations under Empire Wind's lease, and/or that a state of war or national emergency exists warranting the Suspension Order; or that the circumstances in section 1341(d) are present. 43 U.S.C. § 1341(c).

### III.     THE SUSPENSION ORDER IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE APA, 5 U.S.C. § 706.

The Suspension Order is arbitrary and capricious in violation of the APA. Courts are authorized to "hold unlawful and set aside agency actions, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion...." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious where the agency fails to engage in "reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Suspension Order is arbitrary, capricious, and an abuse of discretion because BOEM fails to offer a sufficient explanation for suspending activities on the lease. As an initial matter, prior to BOEM even offering an offshore area for lease, BOEM conducts extensive consultations with the DoW to eliminate from consideration for leasing any areas that present an impermissible risk to national security, whether from radar coverage or otherwise. Empire Wind executed its lease following this process in 2017, under the first Trump Administration. For Empire Wind, BOEM issued the Project's COP Approval roughly 22 months ago after seven years of study, analysis, public review, and interagency consultations, including with DoW. BOEM's Record of Decision and associated memorandum concluded that the Project's implementation of certain mitigation measures would ensure the Project will not adversely affect national security or defense operations.

In light of these mitigation measures, BOEM explicitly found that approval of the COP would be in accordance with the regulations at 30 C.F.R. part 585 and would ensure that all Project activities on the OCS are carried out in a manner that provides for the factors in Subsection 8(p)(4) of OCSLA, including protection of national security interests of the United States. BOEM now claims that opposite is true and continues to reference risk to air defense radar despite the fact that the existing mitigation measures address just that concern and were approved by DoW. This scant explanation is wholly insufficient to

# BRACEWELL

January 2, 2026
Page 4

demonstrate a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. Further, BOEM has not adequately explained why an immediate suspension of construction, which is approximately 60% complete, is necessary to work with Empire to achieve the alleged need for additional mitigation. And it is not clear why the project would be treated differently from operating assets in coastal waters.

The Suspension Order is also arbitrary and capricious because it is not narrowly tailored. Interior's press release suggests that the Suspension Order aims to address concerns related to air defense radar interference caused by the spinning of wind turbine blades. But the Suspension Order halts all construction activities—even those that cannot impact air defense radar. Interior and BOEM have not shown a rational connection between the facts found and the choice made. The Suspension Order is an overly broad remedy that is not narrowly tailored to address the risk purportedly identified by BOEM and DoW, which BOEM has otherwise failed to reasonably explain.

The United States' issuance of the Suspension Order also violates the change-in-position doctrine and was improperly motivated by undue political pressure. The arbitrary and capricious nature of the Suspension Order is further underscored by the United States' public statements regarding the justification for the Suspension Order, which focus on the cost of offshore wind energy and the United States' current view that this energy source is inferior to natural gas. Such statements, which are wholly unrelated to national security concerns, demonstrate that the Suspension Order is arbitrary and capricious, having been adopted for pretextual reasons not identified in the Order itself.

**IV.   THE SUSPENSION ORDER VIOLATES SECTION 558 OF THE APA, 5 U.S.C. § 558.**

The Suspension Order also violates Section 558 of the APA because BOEM issued it "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). APA Section 558 makes it unlawful for an agency to issue a "withdrawal, suspension, revocation, or annulment of a license" if it does not give the licensee "notice" and "opportunity to demonstrate or achieve compliance with all lawful requirements" "before" the agency acts. *Id*. § 558(c).

**V.   THE SUSPENSION ORDER VIOLATES EMPIRE WIND'S FIFTH AMENDMENT RIGHT TO DUE PROCESS, U.S. CONST. AMEND. V.**

The Fifth Amendment to the United States Constitution provides: "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. The United States does not have unfettered discretion to halt work on an offshore lease. Instead, OCSLA and Interior's regulations implementing OCSLA restrict the ability of BOEM to stop activities on a lease occurring under a duly issued approval and restrict the ability of BOEM to revoke or suspend Empire Wind's COP Approval or suspend or cancel Empire Wind's Lease. *See* 43 U.S.C. § 1341; 30 C.F.R. Parts 285, 585. These limitations endow Empire Wind with an expectation that its lawful activities may continue and that the COP Approval and Lease will continue to remain effective in the absence of the government's exercise of this limited authority, providing Empire Wind with a property interest in the COP Approval and Lease. Moreover, BOEM failed to provide any explanation as to how the Project, and ongoing construction, poses a risk to

January 2, 2026
Page 5

national security, claiming only that a classified report supports this determination. The Suspension Order did not provide Empire Wind with fair notice, depriving Empire Wind of its Fifth Amendment right to due process.

## VI.  THE SUSPENSION ORDER IMMEDIATELY AFFECTS A LEGAL INTEREST OF EMPIRE WIND

OCSLA's citizen-suit provision provides that "[a]n action may be brought . . . immediately after notification of the alleged violation in any case in which the alleged violation constitutes an imminent threat to the public health or safety or would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3).

If it remains in place, the Suspension Order will strike a fatal blow to a Project that is fully and duly permitted under the law and has been in active construction for over a year at a cost of billions of dollars. Due to the Suspension Order, Empire Wind's financing is immediately threatened, and Empire Wind is unable to draw down on its construction loan used to fund construction efforts and pay employees and contractors. If the Suspension Order is not rescinded, it may jeopardize the Project's existing funding. Empire Wind's tight construction time frame also necessitates rescission of the Suspension Order.

Certain construction activities are permitted to continue under the terms of the Suspension Order to prevent impacts on safety, health, and the environment. But Empire Wind expects it will be prevented from completing construction of the Project altogether, resulting in an irreparable loss of the Project, thousands of jobs, and Empire Wind's approximate $4 billion spent on the Project to date. Empire Wind will also face reputational harm and significant financial losses, including contract delay, termination fees, and millions of dollars per day in costs associated with the stalled installation of Project components. These losses would come on top of the enormous losses and lost weeks of its offshore construction season Empire Wind already suffered because of Interior's earlier issuance of the Stop Work Order.

## VII.  CONCLUSION

For the reasons set forth above, the United States must rescind the Suspension Order as it violates the United States' Constitutional and legal obligations. Because the Suspension Order is immediately and irreparably injuring Empire Wind, we intend to pursue litigation in federal court to seek a judicial remedy unless the Suspension Order is vacated. This letter sufficiently states Empire Wind's grounds for filing suit challenging the Suspension order. This letter also covers all violations of OCSLA and the APA by the federal government that may be established by information later provided to Empire Wind.

# BRACEWELL

January 2, 2026
Page 6

Please reach out to me at ann.navaro@bracewell.com or 202-294-8700 if you have any questions regarding this response.

Sincerely,

Ann D. Navaro

Partner

# BRACEWELL

January 2, 2026
Page 7

### CERTIFICATE OF THEODORE MUHLFELDER

Pursuant to 28 U.S.C. § 1746(1) and 43 U.S.C. § 1349, I declare under penalty of perjury under the laws of the United States that the factual information in the foregoing is true and correct.

Executed on January 2, 2026, at
Newton, Massachusetts

_____
THEODORE MUHLFELDER
Vice President, Renewables US
Equinor Wind US LLC