## DECLARATION OF HONORABLE DALE R. MARKS

I, Dale R. Marks, declare as follows:

1. (U) I am the Deputy Under Secretary of War for Acquisition and Sustainment. In this role, I am responsible to the Undersecretary of War for Acquisition and Sustainment for all matters pertaining to acquisition; contract administration; logistics and materiel readiness; installations and environment; operational energy; chemical, biological, and nuclear weapons; the acquisition workforce; and the defense industrial base. The information contained in this declaration is based entirely on my personal knowledge or information obtained through the performance of my professional duties.

2. (U) I was previously confirmed as the Assistant Secretary of War for Energy, Installations and Environment. In that role, I am responsible for all Department of War (DoW) matters relating to energy, installations, and the environment, including operational and facility energy, installation maintenance, and environmental planning. In so doing, I provided budgetary, policy, and managerial control over the Department's extensive real property assets, which include millions of acres of land in excess of 500,000 buildings and structures located at over 800 installations.

3. (U) I also previously served as the Executive Director of the 96th Test Wing at Eglin Air Force Base, Florida. I directed a workforce of over 10,000 military, civilian, and contractor personnel, leading developmental testing and evaluation of advanced weapons systems. I was responsible for all base operating support, infrastructure, and services

support for the Air Force's largest installation, with tenant organizations from across all the Services.

4. (U) My prior experience includes serving as the Deputy Director for Strategy, Plans, Programming, and Analysis for National Guard Bureau (NGB) Space Operations, managing critical requirements and policy for DoW, U.S. Space Force, and National Guard space operations. Prior to that, I served as Deputy Chief of Staff at Continental NORAD Region – 1st Air Force (Air Forces Northern) and as deployed Chief of Staff for Operational Sustainment in Kabul with U.S. Forces – Afghanistan and NATO RESOLUTE SUPPORT. I also served as a Senior Environmental Consultant to the Secretary of the Air Force's Office for Energy, Installations, and Environment. And once held the position of Deputy Director at the National Operations Center, Department of Homeland Security.

5. (U) Prior to my career in civil service, I served over 24 years of both active duty and national guard service in the U.S. Air Force. As an Air Force combat fighter pilot, I flew over 3,000 hours in A-10, F-15E, AT-38, and F-16 aircraft.

6. (U) As part of my present duties as Assistant Secretary of War for Energy, Installations and Environment, I am the Secretary's delegated manager of the Military Aviation and Installation Assurances Clearinghouse, set forth in 10 U.S.C. §183a. The Clearinghouse coordinates DoW's review of applications for energy projects and antenna structure projects filed with the Secretary of Transportation pursuant to 49 U.S.C. §44718. I am further familiar with the Outer Continental Shelf Lands Act at 43 U.S.C. §1331 *et. seq.* and the process by which offshore wind energy projects have historically been evaluated

~~SECRET//NOFORN~~

and the mitigation to interference with aviation radar requirements attendant to the approval of these projects.

7. (U) The Undersecretary of Defense for Acquisitions and Sustainment has delegated to me, original classification authority (OCA) over the matters involving DoW's review of wind-energy projects referred to the Clearinghouse. As such, I am the original classification authority for the material DoW provided to the Department of Interior, Bureau of Ocean Energy Management (BOEM) on November 13, 2025, related to an updated assessment by the DoW regarding risks attendant to the interference with radar caused by wind turbine rotation in the offshore windfarms.

    a. (U) As noted, I am the delegated original classification authority pursuant to Executive Order ("EO") 13526, Section 1.3(c), 75 Fed. Reg. 707 (Jan. 2010). As a result, and pursuant to all applicable Executive Orders, I am responsible for the protection of classified information within the Office of the Undersecretary of War for Acquisitions and Sustainment, OUSW(A&S) applicable to windfarm projects. This means that I am authorized to assess the current, proper classification of DoW information, up to and including TOP SECRET information, based on the classification criteria of EO 13526 and applicable document regulations. As part of my official duties, it is my responsibility to ensure that any determinations as to the release or withholding of any such documents or information are proper and do not jeopardize national security.

    b. (S//NF) ████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████

Page | 3

~~SECRET//NOFORN~~

[REDACTED]

c.  (U) Each paragraph in this declaration, and the accompanying exhibits, is marked with letters indicating the level of classification and restrictions on dissemination applicable to that paragraph. Paragraphs marked with "U" are unclassified and those marked with "CUI" contain controlled, unclassified information. Paragraphs marked with an "S" are classified SECRET, I.e., information the unauthorized disclosure of which could reasonably be expected to cause serious damage to the national security. Information marked "NF" or "NOFORN" requires the permission of an appropriate official at the originating organization to release the information in any form to foreign governments, foreign nationals, foreign organizations, or non-U.S. citizens. And finally, information marked "REL USA, CAN" requires the handling under the same terms as "NF" or "NOFORN" except that properly security-cleared Canadian officials, with a need to know, may be provided the information independent of approval by an official at the originating organization.

d.  (CUI) Under the EO, classified information may only be provided to individuals who: (1) have a properly adjudicated security clearance; (2) have signed a non-

~~SECRET//NOFORN~~

disclosure agreement; and (3) have a "need to know" (NTK) the information assessed by an appropriate Executive Branch official. ███

███

e. ███ The classified materials provided to BOEM include ███

███ Therefore, I confirm that the information in the materials remains currently and properly classified as SECRET REL USA, CAN or SECRET NOFORN and that dissemination outside of those channels could reasonably be expected to cause serious damage to national security.

8. (CUI) A DoW review of a clearinghouse project involves coordination across multiple DoW components and the military departments. This process is intended to identify and measure the degree that a proposed energy project interferes with military operations and readiness, and to ascertain what, if any, mitigation measures can be adopted or implemented to quell, or reduce, identified concerns. In the event mitigation cannot be facilitated, the Secretary may reject the proposal for national security reasons. Nevertheless, the extant clearinghouse process focuses on project disruption to military

~~SECRET//NOFORN~~

operations and readiness, and whether that can be mitigated rather than evaluating potential threats to critical infrastructure or the homeland.

a. ███████████

███████████

███████████

███████████

███████████

███████████

███████████

b. ~~(S//REL USA, CAN)~~ ███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

9. ~~(S//REL USA, CAN)~~ In reality, the global threat-picture is evolving as adversary capabilities advance. ███████████

███████████

~~SECRET//NOFORN~~

~~SECRET//NOFORN~~

10. (S//REL USA, CAN) ████████

████████ The Chairman of the Joint Chiefs of Staff (CJCS) manual 3105.01B directs the combatant commanders to identify the consequence and probability of various risks. The manual defines "significant risk" as presenting a "severe level of impact on the thing of value." ████████

~~SECRET//NOFORN~~

~~SECRET//NOFORN~~

████ Graphically – per the CJCS manual – a significant risk is one that poses major to extreme consequence that is likely to very likely to occur.

11. ~~(S//REL USA CAN)~~ ████

████

████

████

████

12. ~~(S//NF)~~ ████

████

████

13. ~~(S//NF)~~ ████

████

████

████

a. ~~(S//NF)~~ ████

████

████

████

████

████

████

████

~~SECRET//NOFORN~~

b. (S//NF) ████████████████████████
████████████████████████
████████████████████████
████████

c. (S//NF) ████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

14. (S//NF) ████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

15. (S//NF) ████████████████████████
████████████████████████
████████████████████████
████████

~~SECRET//NOFORN~~

16. (CUI) This MOU exists, at least in part, to protect the national security of the United States and ensure that DoW may keep DoI informed of any risks presented by Energy developments on the Outer Continental Shelf.

17. (U) I swear under penalty of perjury that the preceding information is true and accurate to the best of my knowledge.

MARKS.DALE.R.1080786405
Digitally signed by MARKS.DALE.R.1080786405
Date: 2026.01.08 17:54:25 -05'00'

HON Dale R. Marks
Deputy Under Secretary of War for Acquisitions & Sustainment

~~SECRET//NOFORN~~