# **EXHIBIT B**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPIRE LEASEHOLDER LLC, *et al.*, </br></br> *Plaintiffs*, </br></br> v. </br></br> DOUGLAS J. BURGUM, in his official capacity as Secretary of the Interior, *et al.*, </br></br> *Defendants*. | Case No. 1:26-cv-00004-CJN </br></br> Judge Carl J. Nichols |

### REBUTTAL DECLARATION OF PATRICK ENGLAND

Pursuant to 28 U.S.C. § 1746(2), I, Patrick England, hereby declare:

1. Since May 2018, I have served as the Regional Security Manager for Equinor US Operations LLC, which supports Empire Offshore Wind LLC and Empire Leaseholder LLC (collectively, "Empire Wind") to ensure security and safety of Empire Wind's facilities and to coordinate with national security agencies regarding the construction and operations of the Empire Wind Project's ("Project") onshore and offshore facilities. My present duties and responsibilities include Management of the Security program for all of Equinor US Operations LLC's assets in North America including conducting security threat assessments, developing security plans, and acting as the liaison between local and national law enforcement and the military. Between 2004 and 2018, I held other managerial positions with US Army Special Forces and J. Connor Consulting, Inc. I am fully knowledgeable of the facts set forth herein.

2. I have reviewed the Federal Defendants' Opposition to Empire Wind's Motion for Preliminary Injunction and Motion for Stay, the declaration of the U.S. Department of the Interior's Deputy Assistant Secretary for Land and Minerals Management, Jacob Tyner, and the exhibits attached thereto, and the declaration of the Deputy Under Secretary of War for Acquisition and Sustainment, Dale R. Marks.

3. As Regional Security Manager for Equinor US Operations LLC's assets in North America, I have advised on de-confliction of offshore wind project construction and operations on the Outer Continental Shelf ("OCS") to assess the Project's potential impacts on military operations and facilities. In this role, I coordinate and consult with military branches and offices, such as the U.S. Coast Guard, Department of the Navy ("Navy"), the Department of War ("DoW") (formerly Department of Defense), and the Federal Aviation Administration. This coordination and consultation typically consists of Empire Wind's presentation of the Project's proposed construction and operations activities to each military branch and office and seeking confirmation from these branches and offices that military facilities and operations will not be unacceptably impacted by the Project's activities.

4. As part of these consultations with military branches and offices, I participated in the consultation process with the DoW Clearinghouse described in the January 5, 2026 Declaration of Elisabeth Treseder, Dkt. No. 8-3. My experience coordinating with the DoW Clearinghouse included discussions relating to the mitigation of radar interference or "clutter" that can be associated with offshore energy facilities. I also participated in Empire Wind's consultation with the U.S. Department of the Navy regarding impacts resulting from subsurface sonar and use of foreign vendors. *Id.*

5. In my role as Regional Security Manager for Equinor US Operations LLC, I am responsible for the security of Empire Wind's onshore facilities under the Marine Transportation Security Act, which dictates the protection of ports and waterways against terrorism.

6. Equinor US Operations LLC is also a member of the Federal Bureau of Investigation's Domestic Security Alliance Council ("DSAC"), which provides restricted information to the private sector relating to credible and imminent threats to the domestic facilities

or operations of U.S. companies. I am Equinor US Operations LLC's DSAC representative designated to receive notifications from DSAC regarding potential domestic security threats that pose an imminent danger. I have not received such a notification regarding the Project in my current role.

7. I am also Equinor US Operations LLC's representative for the North American Electric Reliability Corporation's Electricity Information Sharing and Analysis Center ("E-ISAC"), the government agency responsible for the sharing of security threat information with the potential to impact reliability of the nation's electric grid. E-ISAC receives information from the Federal Bureau of Investigation relating to potential threats to critical energy infrastructure. I periodically receive notifications from E-ISAC relating to potential threats to companies operating critical energy infrastructure. Upon receipt of these notifications, I consider whether threats are posed to Equinor US Operations LLC's facilities or operations and implement necessary mitigations.

8. I also consult with members of Equinor's global security team, including Regional Security Managers employed by other Equinor subsidiaries responsible for the security and de-confliction of Equinor assets outside of North America. Through these consultations, I am familiar with the process of de-conflicting energy assets to minimize impacts on military operations through mitigation measures, as well as the types of mitigation measures accepted by international national security agencies. Equinor has installed offshore wind turbines offshore Norway, the United Kingdom, and Poland, and is exploring potential development of offshore wind projects off the coasts of South Korea and Japan.

9. Equinor's global Security team has experience deploying various mitigation measures to address potential impacts to military operations or national security, including

development and implementation of an agreement with the United Kingdom's Ministry of Defense to assist with upgrades to the United Kingdom's military radar and a continuing annual payment for maintenance of this radar system. Equinor also worked with Poland's Ministry of Defense to mitigate challenges relating to the purchase of radar equipment and placement of radar on wind turbine generators to increase radar surveillance in the wind project's area. Much of this work is typically completed during each project's design phase, and military branches and national security agencies often weigh in on the effectiveness of potential mitigation measures and effectively approve the project's design. Equinor also has experience employing mitigation measures for projects that are already installed. Equinor has relationships with defense contractors, such as Lockhead Martin and Serco, familiar with employment of these mitigation measures.

10. In addition to my experience mitigating domestic radar impacts associated with the Empire Wind Project through consultation with the DoW Clearinghouse, I am knowledgeable concerning how radar impacts are mitigated through consultation with international national security agencies through my relationships with Equinor's global Security team.

11. Empire Wind has requested that the U.S. Department of the Interior provide Empire Wind with access to the classified information that supports the agency's issuance of the December 22, 2025 suspension order suspending the Project's lease. This request was shared with the DoW, and the DoW has yet to respond.

12. In my eight years of experience working on offshore wind in the United States, I have never seen an instance in which the government perceives a threat involving critical energy infrastructure or national security concerns and fails to engage with the project developer about its concerns.

-4-

-5-

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746(2) that the foregoing is true and correct.

Executed on January 13, 2026, at Houston, Texas.

_____
PATRICK ENGLAND
Regional Security Manager for Equinor US Operations LLC