IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPIRE LEASEHOLDER LLC, and EMPIRE OFFSHORE WIND LLC,<br><br>                Plaintiffs,<br>   v.<br><br>DOUGLAS J. BURGUM, et al.,<br><br>                Defendants. | Case No. 1:26-cv-004-CJN |
| STATE OF NEW YORK, et al.,<br><br>                Plaintiffs,<br>   v.<br><br>DOUGLAS J. BURGUM, et al.,<br><br>                Defendants. | Case No. 1:26-cv-071-CJN (consolidated) |

**FEDERAL DEFENDANTS' MOTION TO STAY**

The United States Department of the Interior ("Interior"), Secretary Douglas Burgum, Acting Bureau of Ocean Energy Management ("BOEM") Director Matthew Giacona, and BOEM (collectively "Federal Defendants") request that the Court stay these consolidated cases for 45 days (up to and including April 1), at which point Federal Defendants propose that the parties file a status report recommending any necessary further proceedings, including any further stay. Plaintiffs in *Empire Leaseholder* oppose the stay; Plaintiffs in *New York* take no position.

As explained further below, good cause exists for the short stay. Plaintiffs challenge BOEM's order suspending all ongoing activities on the Empire Wind Project for 90 days. Letter from Matthew Giacona to David McSweeney (Dec. 22, 2025) ("Suspension Order" or "Order"),

1

Ex. B to Decl. of Jacob Tyner (Jan. 12, 2026), Dkt. No. 29-2. The Order expires on March 22. Further, BOEM issued the Order to facilitate review of any potential mitigation measures to address then-new information from the Department of War that implicates national security concerns. *See* Suspension Order. The end of that review may result in a further decision from BOEM. *See id*. Though the timing of any further BOEM action is uncertain, proceeding to immediately litigate the case as presently pled would potentially waste both the Court's and the parties' resources. And because the Suspension Order is preliminarily enjoined, Plaintiffs will not be prejudiced by a short stay. At the expiration of the stay, the parties can confer and determine what, if any, further proceedings are appropriate.[1]

## FACTUAL BACKGROUND

On November 21, 2023, BOEM issued a joint Record of Decision with the National Marine Fisheries Service documenting its decision to approve of the Empire Wind Offshore Wind Project. Dkt. No. 29-1. The Project has been under construction in federal waters off the coast of New York. *See* Compl. ¶ 28, Dkt. No. 3. On or around November 26, 2025, BOEM received classified information from the Department of War describing "the rapid evolution of relevant adversary technologies and the resulting direct impacts to national security from offshore wind projects." Suspension Order; Tyner Decl. ¶ 6. On December 22, 2025, BOEM issued an order, "pursuant to 30 C.F.R. § 585.417(b), to suspend all ongoing activities related to the [Project] on the Outer Continental Shelf for the next 90 days for reasons of national security." Suspension Order. BOEM

---

[1] We understand that Plaintiffs intend to file by February 27 one or more motions for BOEM to complete the administrative record or for the Court to consider extra-record evidence in its review of this Administrative Procedure Act case. Under the Court's scheduling order, such a motion would vacate the current summary judgment briefing schedule. *See* Dkt. No. 35; Minute Order, Feb. 20, 2026. The intended purpose of a stay here could similarly be met by extending Federal Defendants' deadline to respond to those motions to April 15 (*i.e.*, two weeks after April 1).

determined that the Project's current mitigation measures did not adequately provide for protection of national security interests. Tyner Decl. ¶ 7. BOEM intended to determine whether additional mitigation would address these concerns within the 90-day review period, but BOEM explained that a longer review period may be necessary based on the status of its discussions with the Department of War. Suspension Order. "Given the construction status of this project, BOEM will consider all feasible mitigation measures before making a decision as to whether the project must be cancelled." *Id.* Per its terms, the Suspension Order will expire on March 22 absent an extension. On January 15, the Court preliminarily enjoined the Suspension Order. *See* Minute Order, Jan. 15, 2026.

## LEGAL STANDARD

This Court's authority to stay proceedings flows from its inherent equitable authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). In evaluating a motion to stay, courts must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. 248 at 254–55. Courts in the D.C. Circuit consider (1) "whether a stay would promote efficient use of the court's resources"; (2) "the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue"; and (3) "harm to the nonmoving party if a stay does issue [.]" *Allen v. District of Columbia*, No. 20-cv-02453-TSC, 2024 WL 379811, at *2 (D.D.C. Feb. 1, 2024) (citation omitted); *Nat'l PFAS Contamination Coal. v. EPA*, No. 22-cv-132-JDB, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023) (same); *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75-JEB, 2023 WL 2838131, at *2 (D.D.C. Apr. 7, 2023) (same).

3

**ARGUMENT**

In the interests of judicial economy, the Court should stay this case for 45 days (up to and including April 1). The Suspension Order that Plaintiffs challenge expires on March 22 and its terms anticipate potential future agency action. That action could resolve the matter or necessitate amended complaints. Thus, a stay would promote judicial economy and prevent unnecessary expenditure of Federal Defendants' and Plaintiffs' resources litigating the case as presently pled. The proposed stay would not prejudice any party because the Suspension Order is preliminarily enjoined.

### A. The Interests of Judicial Economy Strongly Favor a Stay

First, a stay would clearly serve the interests of judicial economy. A stay is appropriate "when there are legitimate developments that could obviate the need for judicial review," *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025). "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (citation omitted); *see also Allen,* 2024 WL 379811, at *5 (granting a stay because it would "promote efficient use of the court's resources[,]" as the "court's limited resources are not well spent adjudicating . . . disputes that may be obviated [by appeal proceedings]"); *Nat'l PFAS Contamination*, 2023 WL 22078, at *5 (granting a stay where the agency announced plans to promulgate a rule that was expected to render the case moot).

The Court's present scheduling order has summary judgment briefing set to commence on March 6, to be completed by April 29.[2]  *See* Dkt. No. 35.  But the Suspension Order expires on March 22.  *See* Suspension Orde.  Further, the Order contemplates that BOEM may be making a further decision regarding Project—the Order's goal was to facilitate discussions in that regard. *See id.*  Indeed, representatives from Interior and Empire Wind are engaged in those discussions. The result of those discussions and the agency's review will likely clarify whether this case will necessitate a substantively different legal analysis or, indeed, whether this litigation should proceed at all. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 n.11 (1980) ("[O]ne of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review." (internal citation and quotation marks omitted)).  Should BOEM, Empire Wind, and the Department of War be able to identify feasible mitigation measures to address the national security concerns, it is likely the parties would be able to explore a resolution of the present complaints beyond litigation.  Conversely, if BOEM takes a new action impacting the Empire Wind Project, it would likely affect the parties' positions and contentions in this case.  At a minimum, it would result in a new final agency action, any challenge to which would necessitate amended complaints.

Judicial economy would not be served by proceeding to litigate the cases as presently pled, when Plaintiffs' case is likely to be mooted or impacted by the ongoing administrative proceeding and any future BOEM's new decision.  Staying this case will support "economy of time and effort for [the Court], for counsel, and for litigants." *Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C. Cir. 1988) (quoting *Landis*, 299 U.S. at 254); *see also Nat. Res. Def. Council v. Kempthorne*, No. 1:05-cv-1207-LJO-GSA, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) ("The efficiencies of

---

[2] As noted above, the summary judgment briefing schedule is vacated with the filing of any motion regarding the administrative record.  *See infra* at 2 n.1.

Federal Defendants' proposed [stay] are obvious. . . . Depending on the outcome of the [agency's action on remand], the Court's intervention may not be needed at all. Even if further judicial intervention is sought, the Court and the parties would benefit from an updated record that may address some of the numerous issues raised in this case[.]").

### B. A Stay Will Prevent Harm to Federal Defendants

Absent a stay, Federal Defendants would be forced to spend limited Department of the Interior and Department of Justice resources litigating the merits of BOEM's Suspension Order despite its expiration and the potential for further BOEM action. *See, e.g., J.M. Martinac Shipbuilding Corp. v. Washington*, No. 06-cv-1544-JCC, 2007 WL 445438, at *4 (W.D. Wash. Feb. 6, 2007) (noting that it is prejudicial to force government Defendants to proceed in litigation "when it is already clear that the outcome of the [administrative proceedings] will impact the final resolution of this case[.]"). If litigation continues in the interim, the "federal agenc[y] would be required to dedicate staff time and resources to litigating the merits of [p]laintiffs' claims, [when] those resources could be re-directed to other efforts." *Nat. Res. Def. Council*, 2015 WL 3750305, at *8; *see Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (noting that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government"). The same could also be said for Plaintiffs' resources. The better course is to stay proceedings.

### C. There Will be No Prejudice to the Non-Moving Parties

A stay will not prejudice Plaintiffs because the Suspension Order is preliminarily enjoined. Specifically, the Court ordered that the Suspension Order "is hereby enjoined pending a final adjudication of the merits of Empire Wind's Complaint and claims . . . and, during that period, defendants are enjoined from taking actions to implement or enforce that Suspension Order." *See*

Tr. 16:10–16:14, Jan. 15, 2026. So long as that injunction remains in place, Plaintiffs are "unlikely to be prejudiced by a stay that could reduce the burden of litigation on [all] parties." *Cunningham v. Homeside Fin., LLC*, No. 17-cv-2088-MJG, 2017 WL 5970719, at *2 (D. Md. Dec. 1, 2017); *see Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022).

We recognize that, as part of its preliminary injunction ruling, the Court stated an intent to take up the merits "on an expedited basis." *See* Tr. 16:12, Jan. 15, 2026. But we submit that, upon further consideration, the Order's expiration date and the potential for further BOEM action counsel against unnecessary expediency.

## CONCLUSION

A 45-day stay of this case would best serve judicial economy, preserve Federal Defendants' and Plaintiffs' resources, and would not prejudice Plaintiffs because the Court has enjoined BOEM's Suspension Order. The Court should stay this case up to and including April 1 and further order the parties to file a status report on April 1 proposing what further proceedings, if any, are appropriate.

February 25, 2026

        ADAM R.F. GUSTAFSON
        Principal Deputy Assistant Attorney General

        PETER M. TORSTENSEN, JR.
        Deputy Assistant Attorney General

        JOHN K. ADAMS
        Senior Counsel and Chief of Staff

        *s/ Kristofor R. Swanson*
        KRISTOFOR R. SWANSON
        (Colo. Bar No. 39378)
        United States Department of Justice
        Environment & Natural Resources Division

        Natural Resources Section
        P.O. Box 7611
        Washington, DC 20044-7611
        (202) 598-1937
        kristofor.swanson@usdoj.gov

        *Attorney for Federal Defendants*