UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPIRE LEASEHOLDER LLC, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. 1:26-cv-00004-CJN |
| | ) |
| DOUGLAS J. BURGUM, in his official capacity as Secretary of the Interior, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| STATE OF NEW YORK, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. 1:26-cv-00071-CJN |
| | ) *(consolidated)* |
| DOUGLAS J. BURGUM, in his official capacity as Secretary of the Interior, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**EMPIRE WIND'S OPPOSITION TO DEFENDANTS' MOTION TO STAY**

This action challenges the Bureau of Ocean Energy Management's ("BOEM") December 22, 2025, Director's Order (the "Suspension Order") suspending the Empire Wind Project's ("Project") offshore lease, marking the agency's second unlawful attempt to halt construction of the Project within the span of eight months. In the wake of this Court enjoining the Suspension Order and finding that "Empire Wind has established that it is likely to succeed on the merits of at least one of its unrebutted claims" (Tr. at 13:13-15, Jan. 15, 2026), the Defendants (collectively, "BOEM") have now asked the Court to stay this case. According to BOEM, a stay is warranted because the Suspension Order expires on March 22, 2026, and there is a possibility that BOEM will issue a "further decision," that would "likely affect the parties' positions and

contentions in this case." Dkt. No. 41 ("Stay Motion") at 5. The Court should reject BOEM's efforts to short circuit the litigation process. Speculative actions are not sufficient basis to delay proceedings and cannot support any purported interest in judicial economy.[1]

## I.   BACKGROUND

Empire Wind is constructing the Project on the Outer Continental Shelf roughly 14 miles offshore Brooklyn, New York. Dkt. No. 8-2 at ¶ 3. BOEM first halted construction in April 2025 based on unspecified "feedback" it received regarding the Project, causing Empire Wind to lose more than one month of construction time and incur $200 million in costs before BOEM amended its order in May 2025. *Id*. at ¶¶ 17, 38. Empire Wind proceeded to spend $1.5 billion more in construction costs, in good faith reliance that the Project was to proceed once BOEM lifted the April 2025 stop work order, *id.* at ¶ 38, only to have BOEM issue the Suspension Order "suspend[ing] all ongoing activities related to the Empire Wind 1 Project on the Outer Continental Shelf for the next 90 days for reasons of national security." Dkt No. 8-1 at 1. The Suspension Order stated it would expire in 90 days (on March 22) unless BOEM elected to extend it. *Id*.

Facing the likelihood of Project termination, Dkt. No. 8-2 at ¶ 44, Empire Wind filed this action. Dkt. Nos. 3, 8. On January 15, 2026, this Court issued a stay and preliminary injunction. *See* Minute Order, Jan. 15, 2026. In doing so, the Court expressed its intent to address the merits "on an expedited basis" and directed the parties to jointly submit a proposed expedited briefing schedule. *See* Tr. 16:12, 18-20, Jan. 15, 2026. The Court subsequently adopted the parties' joint proposed schedule, under which, notably, summary judgment briefing would not be completed

---

[1] BOEM suggests that the "purpose of a stay" could be accomplished by giving it an additional 33 days to file a response to Empire Wind's motion regarding the administrative record. Stay Motion at n.1; *see* Dkt. No. 42. To the extent BOEM's statement is construed as a motion for extension of time, Empire Wind also opposes that motion.

until April 29, 2026, roughly five weeks after the Suspension Order's potential expiration date. Dkt. No. 35.  On February 13, 2026, BOEM produced the administrative record.  Dkt. No. 40.  On February 27, 2026, Empire Wind and the State of New York filed motions to complete the administrative record and to rely on extra-record evidence, Dkt. Nos. 42-43, causing the Court to vacate the parties' briefing schedule.  *See* Minute Order, Mar. 2, 2026.

## II. LEGAL STANDARD

"In considering a stay, courts must weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (internal citations and quotations omitted).  Hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay.  Id.  "[T]he Supreme Court has cautioned that, 'if there is even a fair possibility that the stay . . . will work damage to someone else,' the movant 'must make out a clear case of hardship or inequity in being required to go forward.'" *Garcia v. Acosta*, 393 F. Supp. 3d 93, 110 (D.D.C. 2019) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).  The mere fact that a stay is in the interest of judicial economy is not enough to warrant a stay of proceedings, especially where it is not certain that a future agency action will moot the case or change the status quo.  See id. at 110-11 (citing *Am. Hosp. Ass'n v. Dep't of Health and Human Servs.*, 2018 WL 5777397, at *2 (D.D.C. Nov. 2, 2018)); *see also Alts. Res. & Dev. Found. v. Glickman*, 101 F. Supp. 2d 7, 9, 15-16 (D.D.C. 2000).

## III. ARGUMENT

**A.   BOEM Has Not Alleged Adequate Justification For A Stay.**

BOEM has not provided adequate justification for a stay.  When the parties agreed on an expedited briefing schedule on the merits, everyone was aware of the Suspension Order's

March 22 expiration date stated in the Order and the potential for another BOEM action.  BOEM has not offered any new information that warrants a change, let alone that justifies a stay.

First, BOEM has neither withdrawn the Suspension Order nor committed to Empire Wind that it will not take another surprise action that relies on equally specious legal theories and without the process required by the Administrative Procedure Act.  BOEM simply hypothesizes that it *might* issue some "further decision" and admits that "the timing of any further BOEM action is uncertain." Stay Motion at 2.  BOEM represents that the parties are engaged in discussions about the Project and potential mitigation as contemplated by the Suspension Order, *id.* at 5, but those "discussions," to date, have been infrequent and entirely cursory in nature, devoid of any meaningful input by the government or even the attendance of the Department of War, the entity that prompted the alleged concerns about national security.  *See* Letter from Molly Morris to Secretary Doug Burgum and Acting BOEM Director Matthew Giacona (Exhibit 1).  Empire Wind has had no indication of what, if anything, those discussions may accomplish or of BOEM's next steps.

Second, BOEM's stay request is a thinly veiled attempt to evade review premised on the flawed assumption that "expiration" of the Suspension Order along with a new BOEM decision would render Empire Wind's claims nonjusticiable.  Even if Empire Wind's claims could theoretically be considered moot—an issue not properly presented in a Motion to Stay—those claims would still be justiciable as "capable of repetition yet evading review," as discussed further below.  BOEM's desire to "kick the can down the road" does not justify a stay.

**B.    BOEM Will Not Be Harmed If The Stay Is Denied.**

BOEM asserts that "[a]bsent a stay, Federal Defendants would be forced to spend limited Department of the Interior and Department of Justice resources litigating the merits of BOEM's Suspension Order despite its expiration and the potential for further BOEM action." Stay Motion

at 6. But those circumstances were present when BOEM agreed to the briefing schedule. Further, BOEM will not be required to litigate the merits between now and April 1, 2026, the date BOEM suggests as the end day of the stay. Now that Empire Wind and the State of New York have filed motions regarding the administrative record, the summary judgment briefing schedule has been vacated. *See* Minute Order, Mar. 2, 2026. BOEM need only respond to these limited motions to complete the administrative record by March 13, 2026. Once those motions are decided, the parties will propose a new summary judgment briefing schedule.

Moreover, BOEM's alleged harm is self-inflicted. To the extent the agency is burdened by litigation, it is the result of the unlawful actions BOEM took against five projects on December 22, 2025, all of which have now been enjoined and/or stayed.[2] BOEM's complaints ring particularly hollow considering that it argued to this Court five weeks ago that the Project posed "significant national security risks" that merited suspending ongoing construction without notice or any sort of process. Dkt. No. 29 at 25. Indeed, it was the Court's cognizance of BOEM's alleged national security interests that appeared to prompt the Court's suggestion for an expedited schedule in the case. *See* Tr. at 15:5-22, Jan. 15, 2026.

BOEM now seeks to *delay* resolution of whether it was lawfully permitted to issue the Suspension Order it claimed was necessary to address urgent threats to national security. This suggests that the claimed national security concerns were not, in fact, legitimate or that BOEM intends to take a substantially similar action to address them, or both. If BOEM believes the issues in this case may be rendered moot at some point, it will have an opportunity to make this argument

---

[2] *See* Minute Order, Jan. 15, 2026; *Revolution Wind, LLC v. Burgum*, No. 1:25-cv-2999 (D.D.C. Jan. 12, 2026), Dkt. No. 64; *Va. Elec. & Power Co. v. U.S. Dep't of the Interior*, No. 2:25-cv-0830 (E.D. Va. Jan. 16, 2026), Dkt. No. 81; *Sunrise Wind LLC v. Burgum*, No. 1:26-cv-0028 (D.D.C. Feb. 2, 2026), Minute Order; *Vineyard Wind 1 LLC v. U.S. Dep't of the Interior*, No. 1:26-cv-10156 (D. Mass. Jan. 27, 2026), Dkt. No. 71.

in its summary judgment briefing, or in another appropriate motion, after March 22, 2026. In the meantime, BOEM cannot legitimately suggest that it would be harmed by responding to the narrow pending motions regarding the administrative record.

C.     **Empire Wind Will Be Harmed By A Stay.**

In contrast to the lack of harm to BOEM if the stay is denied, Empire Wind will suffer harm if the stay is granted. Empire Wind has sought this Court's intervention to resolve significant legal issues surrounding BOEM's authority to suddenly and without notice halt construction of a fully permitted, substantially constructed Project, an approach BOEM may repeat for future actions. Without a merits decision in this case as to the limits of BOEM's authority to suspend lease activities under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1337(p)(4), and the process due to Empire Wind, Empire Wind continues to face commercial uncertainty that threatens the Project.

Moreover, BOEM's action will likely be repeated, harming Empire Wind once more. BOEM has now taken seven separate actions suspending the construction of five offshore wind projects—including two actions against Empire Wind—halting construction without notice, process, or legal authority.[3] Six of these actions were enjoined and one was amended to allow construction to continue before being suspended again.[4] Based on this recent repetitive conduct, Empire Wind now has more than a "reasonable expectation" that BOEM will repeat this action again, which would cause Empire Wind significant harm. *See Trump v. Mazars USA, LLP*,

---

[3] *See supra* n. 2; *see also* Dkt. No. 42-1 (April 16, 2025 Stop Work Order issued to Empire Wind); *Revolution Wind, LLC v. Burgum*, No. 1:25-cv-2999 (D.D.C. Sept. 22, 2025), Dkt. No. 36.

[4] *See supra* n. 2; Dkt. No. 42-2 (May 19, 2025 Amended Order allowing construction of the Project to proceed); *Revolution Wind, LLC*, No. 1:25-cv-2999, Dkt. No. 36.

39 F.4th 774, 786 (D.C. Cir. 2022) (denial of motion to stay warranted because challenged action had been repeated and non-movant had reasonable expectation that conduct would reoccur).

To confirm this expectation, the Court need look no further than *Revolution Wind v. Burgum*, currently pending in this Court before Judge Lamberth.  There, BOEM issued a stop work order to the Revolution Wind Project in August 2025, citing unspecified national security concerns and relying, as BOEM does here, on 42 U.S.C. § 1337(p)(4).  *Revolution Wind,* No. 1:25-cv-2999 (D.D.C. Sept. 4, 2025), Dkt. No. 1-1.  On September 22, 2025, Judge Lamberth issued a preliminary injunction regarding that stop work order.  *See id*. at Dkt. No. 36.  But on December 22, 2025, BOEM issued another order to Revolution Wind, again halting the project's construction based on national security concerns under the same legal authority and without process or notice.  *See id*. at Dkt. Nos. 52-1*,* 64.  BOEM's past conduct suggests it now seeks to stay the instant case to continue taking different variations of the same adverse action against the Empire Wind Project while relying on the same improper legal authorities.

In the event BOEM takes a third or more unlawful action(s), Empire Wind's ability to construct the Project will once again be gravely threatened.  At a minimum, Empire Wind will also likely incur hundreds of millions of dollars in delay costs.  Under those circumstances, Empire Wind will be forced to return to this Court and bear the costs of expedited litigation a second time to seek the relief necessary to proceed with construction.  And should Empire Wind succeed in obtaining a stay of a future BOEM action, BOEM could once again ask the Court to stay the next round of litigation, returning to the drawing board once more just as the Court did in *Revolution Wind*.  BOEM tries to portray a stay as helpful to Empire Wind under the guise that it will "prevent unnecessary expenditure of . . . Plaintiffs' resources litigating the case as presently pled."  Stay Motion at 4.  But the reality is, Empire Wind has already expended substantial resources protecting

its interests in this case and stands to lose millions in delay costs—beyond those already incurred from BOEM's previous attempts to stop the Project—or even its entire investment in the Project if BOEM succeeds in its attempts to stall this litigation while it takes yet another action to halt the Project's construction, continuing to evade review of the legality of its action.

BOEM speculates that "Plaintiffs' case is likely to be mooted or impacted by the ongoing administrative proceeding and any future BOEM's new decision," Stay Motion at 5, but BOEM has yet to take another action or withdraw the Suspension Order. Even if BOEM's speculative assertions in the Stay Motion were deemed to raise a mootness issue, the circumstances of this case present a quintessential example of an unlawful government activity that is capable of repetition yet—if the stay is granted—could evade judicial review. *Mazars*, 39 F.4th at 786 (finding that case was not moot despite subpoena's expiration because issue of subpoena's legality was capable of repetition yet evading review: "there is more than just a reasonable expectation that the Committee would reissue the same subpoena. It has already done so."). Indeed, if BOEM suggests that the dispute here is moot and not capable of repetition, then BOEM should be prepared to represent to the Court that it will not issue a subsequent suspension order. If BOEM refuses, then the dispute is definitively capable of repetition.

While a future action by BOEM may be marginally different from the Suspension Order, the fundamental issues raised here of lack of notice, lack of due process, and the absence of BOEM's legal authority to suspend construction activities will remain. Moreover, there is no basis to stay the lawsuit now when it is purely speculative at this time whether any future action by BOEM will moot these issues, and "no purpose would be served by requiring plaintiffs to wait and see if history will repeat itself." *Alts. Res. & Dev. Found.*, 101 F. Supp. 2d at 15-16 (denying

motion to stay challenge to agency regulations on the basis that the agency was considering whether to subsequently amend the regulations).

Empire Wind reserves the right to fully brief the issue of whether the case is moot in the event BOEM files a motion arguing that Empire Wind's claims are no longer justiciable. Such a question cannot be resolved through BOEM's Motion to Stay based on a merely hypothetical potential action to be taken (or not taken) by BOEM.

### D.     Judicial Economy Weighs Against A Stay.

Finally, judicial economy will not be served by staying the case. "Postponing the resolution of the issues raised in this case for some indefinite time does not comport with the efficient and timely judicial resolution of matters before the federal courts." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2002) (denying motion to stay proceedings because "[a]llowing a case to languish" would not serve the interest in judicial economy). BOEM recognizes that the Court stated an intent to take up the merits "on an expedited basis" with full knowledge of the Suspension Order's March 22 expiration date but submits that a stay is necessary anyway. Stay Motion at 7. A stay of these proceedings would result in a waste of the significant judicial resources expended in this case since the Complaint was filed on January 4, 2026. Dkt. No. 3. It would also give BOEM free reign to continue its conduct of taking unlawful action, forcing parties to seek judicial intervention, requiring courts to expend significant resources to resolve motions for preliminary relief, only for BOEM to turn around and take a similarly unlawful action prior to briefing the merits of each case. *See supra* at 7 (citing *Revolution Wind*). After wasting the resources of the federal judiciary on six separate occasions, *see supra* at n. 2-3, BOEM cannot plausibly argue that a stay of this case would serve the interest in judicial economy.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny BOEM's Motion to Stay and proceed to rule on the pending motions to supplement the administrative record. Dkt. Nos. 42, 43.

Date: March 4, 2026

Respectfully submitted,

 /s/ Ann D. Navaro

| | |
|---|---|
| Tyler S. Johnson (DC Bar #1003009) | Ann D. Navaro (DC Bar #1643328) |
| (*admitted pro hac vice*) | David A. Super (DC Bar #429359) |
| **BRACEWELL LLP** | Taylor M. Stuart (DC Bar #1671892) |
| 701 Fifth Avenue | **BRACEWELL LLP** |
| Suite 6850 | 2001 M Street NW, Suite 900 |
| Seattle, Washington 98104 | Washington, DC 20036 |
| Telephone: (206) 204-6211 | Telephone: (202) 828-5800 |
| Facsimile: (800) 404-3970 | Facsimile: (800) 404-3970 |
| Email: ty.johnson@bracewell.com | Email: ann.navaro@bracewell.com |
| | david.super@bracewell.com |
| | taylor.stuart@bracewell.com |

*Counsel for Plaintiffs*
*Empire Leaseholder LLC and Empire Offshore Wind LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of March 2026, a true and complete copy of *Empire Wind's Opposition to Defendants' Motion to Stay* was filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system.

                                             */s/ Ann D. Navaro*
                                             Ann D. Navaro