**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMPIRE LEASEHOLDER LLC, and EMPIRE OFFSHORE WIND LLC, | |
| Plaintiffs, | |
| v. | Case No. 1:26-cv-004-CJN |
| DOUGLAS J. BURGUM, et al., | |
| Defendants. | |
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | Case No. 1:26-cv-071-CJN (consolidated) |
| v. | |
| DOUGLAS J. BURGUM, et al., | |
| Defendants. | |

**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS TO COMPLETE
THE ADMINISTRATIVE RECORD AND FOR EXTRA-RECORD EVIDENCE**

## Introduction

Empire Wind asks the Court to order the Bureau of Ocean Energy Management to complete its administrative record by including two prior orders related to the project. But Empire Wind does not provide any evidence that the agency directly or indirectly considered the documents, as would be necessary to overcome the presumption of regularity that attaches to an agency's designation of its administrative record. Similarly, Empire Wind fails in its alternative request for the Court to consider the orders as extra-record evidence because Empire Wind has not shown that any exceptions to the record review principle apply to the two documents.

1

New York also seeks to submit numerous extra-record materials for the Court's review of the merits, but with the aim of litigating over agency decisionmakers' subject motivations. New York, however, entirely ignores the standard applicable to that request: it must make a strong showing of bad faith. New York does not even attempt to make that showing and, in any event, it has not submitted any evidence that would otherwise meet the standard.

Empire Wind's and New York's motions should both be denied.

## Relevant Background

These consolidated cases challenge a December 22, 2025, Bureau of Ocean Energy Management (BOEM) order suspending all ongoing activities at the Empire Wind offshore wind energy project. At the time of the order, the project was under construction.

Plaintiffs in *Empire Leaseholder* allege that BOEM acted arbitrarily and capriciously under the Administrative Procedure Act (APA); contrary to the requirements in 5 U.S.C. § 558(c); contrary to the Outer Continental Shelf Lands Act (OCSLA); and in violation of Empire Wind's Fifth Amendment due process rights. Compl., No. 26-cv-0004, ¶¶ 56–87, Dkt. No. 3 (D.D.C. Jan. 2, 2026) ("Empire Compl.").[1] Plaintiffs in *New York* allege that BOEM acted arbitrarily and capriciously under the APA. Compl., No. 26-cv-0071, ¶¶ 91–112 (D.D.C. Jan. 9, 2026) ("New York Compl.").

Pursuant to Local Civil Rule 7(n)(1), BOEM certified its administrative record for the suspension order on February 13. *See* Notice of Admin. R. Certification, Dkt. No. 40. The BOEM Acting Director certified that "the documents listed in the attached index, along with the classified documents previously provided to the court as attachments to the Marks' declaration constitute

---

[1] All docket citations are to No. 26-cv-0004 unless otherwise indicated.

BOEM's Administrative Record for the suspension order."  Decl. of Matthew Giacona ¶ 4, Dkt. No. 40-1; *see also* Index, Dkt. No., 40-2.

Plaintiffs in both cases have now moved for the Court to order BOEM to complete its administrative record or for the Court to consider extra-record evidence in its review of the merits. *See* Mot. & Mem. of Empire Wind, Dkt. No. 42 ("Empire Mot."); State's Mot., Dkt. No. 43 ("New York Mem.").[2]  Empire Wind asks the Court to order BOEM to add to its record a separate April 2025 stop work order that BOEM issued for the project, and a May amendment to that order that allowed work to continue.  Alternatively, Empire Wind asks that the Court consider those two documents as extra-record evidence.  New York asks the Court to consider numerous documents and statements as extra-record evidence.  New York does not provide the Court with any of those materials, and instead attaches a summary to its motion that provides Federal Register citations or hyperlinks to the materials.  *See* New York Mem. Ex. 1, Dkt. No. 43-1.

## <u>Argument</u>

Both motions should be denied.  Empire Wind has not met the standard for either completion of an administrative record or for the consideration of extra-record evidence.  And New York relies on the wrong standard altogether, ignoring that its request for the Court to probe the subjective motivations of agency decisionmakers requires a strong showing of bad faith.  New York comes nowhere close to that standard.

---

[2] New York's motion and supporting memorandum are filed on the same docket entry in a consolidated PDF.  Our citations are to the memorandum, rather than the cover motion.

I.      **Empire Wind's Requests Regarding the April and May Orders Should Be Denied.**

Empire Wind submits an April 2025 stop work order for the project, and a May 2025 amendment to that order that allowed work to continue.  But Empire Wind does not offer any evidence that BOEM directly or indirectly considered either document in issuing the December suspension order.  The documents therefore should not be added to BOEM's administrative record.  Nor has Empire Wind shown that the prior orders qualify under any of the exceptions allowing for extra-record evidence in an APA case.

A.      **Judicial Review of Agency Action is Limited to the Agency's Administrative Record.**

In reviewing final agency action under the APA, Congress directed the courts to review "the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  The "whole record" includes "all documents and materials that the agency directly or indirectly considered" when it made the decision under review.  *Pac. Shores Subdiv. v. U.S. Army Corps of Engr's*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (citation modified).  "To ensure fair review of an agency action, therefore, the court 'should have before it neither more nor less information than did the agency when it made its decision.'"  *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997)).  That is because the court, rather than weighing evidence for itself, is only evaluating the reasonableness of the agency's decision in the context of the information that was before the agency.  *See Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019).  When an agency designates its administrative record, that designation "is entitled to a strong presumption of regularity."  *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008).

Empire Wind also asserts a cause of action under OCSLA, 43 U.S.C. § 1349(a)(1).  *See* Empire Compl. ¶ 17.  There is a question as to whether the OCSLA claim (*id.* ¶¶ 73–79) is one

4

that arises under OCSLA or the APA.  *See id*. ¶¶ 78, 79 (relying on both statutes).  But the Court need not resolve that question now because Empire Wind does not argue that the claim is subject to anything other than administrative record review.  And for good reason: "[T]here exists a strong presumption in [the D.C.] Circuit that when a statute provides for judicial review but does not specify any standard for that review, it should be construed to include the APA standard."  *Citizen Potawatomi Nation v. Salazar*, 624 F. Supp. 2d 103, 108–09 (D.D.C. 2009).  Nor does Empire Wind's due process claim change the analysis.  *See Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 41–44 (D.D.C. 2018).

There are two situations in which a court may consider materials not initially found in the agency's certified record.  The first is when a court orders an agency to "complete" the record. That is, where an agency directly or indirectly considered materials in making its decision, but the agency failed to include those materials in the administrative record.  *See Open Soc'y Inst. v. U.S. Citizenship & Immigration Servs.*, 573 F. Supp. 3d 294, 307 (D.D.C. 2021).  The second situation involves the court's consideration of extra-record evidence—information that the agency did not consider.  But in either case, a successful motion to expand judicial review beyond an agency's certified administrative record "is a rare bird."  *Cape Hatteras Access Pres. All. v. U.S. Dep't of the Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009).[3]

---

[3] Case law (including *Cape Hatteras*) is not always consistent in its use of the phrases "completing the administrative record," "supplementing the administrative record," and "extra-record evidence."  *See Open Soc'y*, 573 F. Supp. 3d at 308.  The point is that there is a difference between: (1) a request to add to the administrative record documents that the agency actually considered but that were not included, and (2) a request for a court to go beyond the administrative record and consider in its review materials that that the agency did not consider.

**B.      Empire Wind Has Not Demonstrated that BOEM Considered the Prior Orders in Issuing the December 22 Suspension Order.**

Empire Wind begins by asking the Court to order BOEM to complete its administrative record by adding to the record the April stop work order and May amendment lifting it.  Empire Wind posits that "it is inconceivable" that the April order and amendment are not in the record.  Empire Mot. 4.  The company complains that "every other key milestone in the government's review and ongoing oversight" is in the record.  *Id*. at 4.  Despite its protests, Empire Wind has not met the standard for completing an administrative record.

"Completion" of an administrative record requires the movant to overcome the presumption of regularity that attaches to an agency's certification of its record.  *Cape Hatteras*, 667 F. Supp. 2d at 114.  That burden is a "heavy" one.  *Smalls v. Bd. Of Correction for Naval Records*, No. 17-cv-606, 2018 WL 11411254, at *1 (D.D.C. July 12, 2018) (citing *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 (D.D.C. 2009)); *see also* Fed. R. Evid. 301 ("the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption").  Clear evidence is required; allegations, assumptions, and speculation are not sufficient.  *See Riggs Nat. Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 295 F.3d 16, 21 (D.C. Cir. 2002); *Hercules, Inc. v. EPA*, 598 F.2d 91, 123–24 (D.C. Cir. 1978).  Thus, to succeed, the movant "must put forth concrete evidence and identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record." *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (2016) (internal quotations omitted) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)).

Empire Wind does not come anywhere close to providing clear evidence that BOEM considered the April and May orders in issuing the December suspension order.  *See Charleston Area Med.*, 216 F. Supp. 3d at 23.  The company does not provide any evidence that the December

order had anything to do with the April and May ones.  Indeed, neither the April nor May order makes any reference to national security concerns, which provided the basis for the December suspension order.  *See* Tyner Decl. Ex. B at 111-113, Dkt. No. 29-2 ("Dec. 22 Order").  To the contrary, the April stop work order relies on "feedback [BOEM] has received . . . about the environmental analyses" for the project.  Empire Mot. Ex. A, Dkt. No. 42-1 ("Apr. 16 Order").

In attempting to meet its burden, Empire Wind points to a May 9 document in the administrative record, arguing that it is contemporaneous with the April and May orders and references radar impacts.  Empire Mot. 5 (citing AR0037).  The document, however, refers to Interior M-Opinion 37086.  *See* AR0037 (located at Empire Mot. Ex. D, Dkt. No. 42-4).  That M-Opinion was issued on May 1, 2025—two weeks *after* the April stop work order—and directed Interior components to re-evaluate decisions that had been made in reliance on a prior interpretation of an OCSLA provision.  *See* M-37086, Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p), Alternate Energy-related Uses on the Outer Continental Shelf (May 1, 2025), *available at* https://www.doi.gov/solicitor/opinions.  The administrative record document does not demonstrate any consideration of the April or May order.

Empire Wind is also wrong that the administrative record includes "every other key milestone in the government's review and ongoing oversight of the Empire Wind Project."  Empire Mot. 4.  The OCSLA regulatory scheme includes numerous other approval stages, including: lease area identification (30 C.F.R. § 585.212); the lease sale (*id.* § 585.22); and submission and approval of site assessment plans (*id.* § 585.605).  And there are numerous other key procedural steps, including: notices of intent to begin environmental review and, where appropriate, release of draft

7

environmental documents (*see* 42 U.S.C. §§ 4336, 4336a(c)); biological assessments and biological opinions under the Endangered Species Act (16 U.S.C. § 1536); essential fish habitat consultations (16 U.S.C. § 1855(b)(2)); and consultation under the National Historic Preservation Act (54 U.S.C. § 306108).  It is unsurprising that not all those procedural and decision points are reflected in the record here.  After all, an administrative record is not intended to contain "every potentially relevant document existing within [the] agency."  *Pac. Shores*, 448 F. Supp. 2d at 7.

Nor is it surprising that certain approval documents are in the administrative record. BOEM, in issuing the December order, considered new national security information from the Department of War in the context of the national security-related mitigation measures that accompanied approval of the project's construction and operations plan.  *See* Tyner Decl. ¶ 7, Dkt. No. 29-2.  But Empire Wind has not presented any evidence that the April and May orders were either directly or indirectly considered.  The request to complete the administrative record with those documents should be denied.

### C.    The April and May Orders Do Not Meet Any Exception Permitting Extra-Record Evidence.

Empire Wind also fails in its alternative request that the Court consider the April and May orders as extra-record evidence.  *See* Empire Mot. 5–7.

Where "a party seeks to add materials to the [judicial] record that it does not contend the agency actually reviewed," courts consider those materials in only "three 'unusual circumstances.'" *Level the Playing Field v. Fed. Election Comm'n*, 381 F. Supp. 3d 78, 89 (D.D.C. 2019) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).  Those unusual circumstances are:

(1) The agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the District Court needed to supplement the record with background information in order to determine whether the agency considered all of

the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (citation modified) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)).

These circumstances are "the exception, not the rule." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010). "These narrow exceptions must be applied sparingly . . . to ensure that courts limit their role to the review of what occurred before the agency." *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. 20-cv-103-RDM, 2020 WL 5642287, at *9 (D.D.C. Sept. 22, 2020). A plaintiff cannot prevail on a motion for a court to consider extra-record evidence absent a showing of one of these "gross procedural deficiencies." *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013).

Of the three narrow exceptions permitting extra-record materials, Empire Wind only pursues two, the relevant factor and inadequate explanation exceptions. Empire Mot. 5–7. With respect to relevant factors, Empire Wind posits that the two orders are necessary because (according to Empire Wind) BOEM did not consider the company's reliance interests in issuing the December suspension order. *Id.* at 6. As to the alleged inadequate explanation, Empire Wind does not provide any details other than to assert that BOEM failed to adequately explain the December order. *Id.* at 7. Empire Wind has not met its burden with respect to either.

First—setting aside whether BOEM had to consider reliance interests in the first place— the April and May orders do not say anything about reliance interests. *See* Apr. 16 Order; Empire Mot. Ex. B, Dkt. No. 42-2 ("May 19 Order"). Thus, they add nothing to the supposed factor that Empire Wind claims BOEM should have considered. Indeed, Empire Wind does not explain how an agency order to *stop construction* can further reliance interests that are based upon a belief that

construction could proceed.  And as explained above, Empire Wind has not shown that the April and May orders focused on the same thing as the December order.  *See supra* at 6–7.

Second—and again assuming for the sake of argument that BOEM did not adequately explain the December order—Empire Wind does not detail how the April and May orders provide the supposedly lacking explanation.  The April and May orders do not say anything about national security concerns.  Indeed, it is difficult to understand how they could fill any explanatory gap given that they were issued several months before BOEM received the information from the Department of War on which BOEM based the December suspension order.  Nor is Empire Wind correct in its effort to posture the April and May orders as evidencing BOEM's interpretation of its authorities.  *See* Empire Mot. 7.  The December suspension order relies on 30 C.F.R. § 585.471(b).  The April order, by contrast, relies on 43 U.S.C. § 1337(p)(4) and 30 C.F.R. § 585.102(a) and does not include an analysis of those or any other authorities.  The May amendment says nothing about authority at all.  *See* Dkt. No. 42-2.

As we explained to Empire Wind when conferring on the present motions, Federal Defendants do not oppose the parties citing the April and May orders as background information. But the prior orders should not be considered for purposes of determining whether BOEM acted arbitrarily or contrarily to law in issuing the December suspension order.

## II.    New York Has Not Made the Necessary Showing of Bad Faith That Would Justify Consideration of Extra-Record Evidence as to Subjective Motivations.

New York's motion should be denied because New York fails to meet—indeed, does not even mention—the standard applicable to its request.  New York asks for the Court to consider certain materials as extra-record evidence.  *See* New York Mem. 4–8.  Specifically, New York references numerous media or social media statements by President Trump and Secretary Burgum; two Executive Orders and one Department of the Interior Secretary's Order; and four other

suspension orders that BOEM issued for other projects, also on December 22. *See* New York Mem., Ex. 1.

In contrast to Empire Wind, New York bases its motion on allegations of pretext. *See* New York Mem. 4–8. New York submits that the evidence will "provid[e] the Court with additional information it can use to evaluate whether" the December order was based upon national security concerns (*id*. at 4), and will "allow the Court to properly evaluate the State's anticipated argument that Agency Defendants issued the Suspension Order . . . for other reasons" (*id*. at 7).

New York is wrong about pretext. But in any event, it fails to wrestle with the appropriate standard of review for its extra-record evidence motion. New York references the D.C. Circuit's standard for extra-record evidence in circumstances of record inadequacy—the standard noted above in addressing Empire Wind's motion. *See id*. at 4–5 (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010); *supra* at 8–9 (quoting *Animal Legal Def. Fund*, 872 F.3d at 611). New York's goal, however, is to focus judicial review on agency decisionmakers' subjective motivations. When probing "the agency's decision-making process," "the 'unusual circumstances' standard utilized in the D.C. Circuit to evaluate requests for record supplementation . . . is not the standard." *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 541 n.6 (D.D.C. 2021).

The Supreme Court has made clear—in a case in which New York was a party—that "a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities." *Dep't of Commerce*, 588 U.S. at 781. "Agency policymaking is not a 'rarified technocratic process, unaffected by political considerations or the presence of Presidential power.'" *Id.* (quoting *Sierra Club v. Costle*, 657 F.2d 298, 408 (D.C. Cir. 1981)). "Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest group relations,

foreign relations, and national security concerns (among others)." *Dep't of Commerce*, 588 U.S. at 781. Indeed, the entire concept of judicial review of agency action derives, in part, from "the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government that should normally be avoided." *Id.* at 780–81. Thus, in "reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Id.* at 780.

There is "a narrow exception to the general rule against inquiring into 'the mental processes of administrative decisionmakers,'" but it requires "a 'strong showing of bad faith or improper behavior.'" *Id.* at 781 (citations omitted). That has also long been the standard in the D.C. Circuit. *See In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998) ("[A]ctual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior."); *Theodore Roosevelt Conserv.*, 616 F.3d at 514 ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." (quotation modified)); *Dallas Safari Club*, 518 F. Supp. 3d at 542–44.

New York does not even attempt to meet the bad faith standard. Indeed, some courts have articulated the standard as requiring "'well-nigh irrefragable proof' of bad faith or bias." *China Trade Ctr., LLC v. WMATA*, 34 F. Supp. 2d 67, 70 (D.D.C. 1999) (quoting *Haney v. United States*, 676 F.2d 584, 586 (Ct. Cl. 1982)). New York does not present any evidence of that here. The President's and the Secretary's strongly stated policy concerns with wind energy do not (and cannot) rise to that level. New York seems to assume that, because the President and the Secretary hold strong policy views regarding efficiencies and costs related to wind projects, any wind-related

decision is pretextual if it at all aligns with those views. But a project can raise national security issues despite (or regardless of) a policymaker's policy concerns about electricity prices, foreign manufacturing, environmental impacts, and aesthetics.

New York makes three other points that similarly do not demonstrate bad faith. *First*, New York notes that it has not been given access to the classified materials BOEM relied on. New York Mem. 5. This is unremarkable. Indeed, New York does not claim to have received access to classified information in the administrative processes for the project's approval and permitting. Nor does it explain why the State would have a need to know that information then or now. Courts also regularly undertake *ex parte* and *in camera* review of classified information that is part of an administrative record and upon which the agency relied in taking the challenged action. *See, e.g.*, *Jifry v. FAA*, 370 F.3d 1174, 1181-82 (D.C. Cir. 2004); *United States v. Holland*, 48 F. Supp. 2d 571, 577 (E.D. Va. 1999), *aff'd*, 214 F.3d 523 (4th Cir. 2000). Nothing about BOEM's protection of classified national security information from the Department of War demonstrates bad faith.

*Second*, New York points to the roughly one month between BOEM's receipt of the classified information and the suspension order, and that the order suspended both construction and operations. New York Mem. 6. As to timing, an agency's deliberation of an issue over several weeks hardly evidences bad faith; indeed, on its face it evidences the contrary. As to the alleged disconnect between the national security concern and project construction, New York incorrectly equates the standard of review on the merits (unreasonable decision-making) with the standard necessary for its present motion (bad faith). Neither is present here. But in any event, the former does not amount to the latter.

*Third*, New York points out that other courts have preliminarily enjoined similar orders for other projects. *Id*. at 6. But this undercuts the State's argument. Those courts had no problem

analyzing the injunction standard's likelihood of success on the merits prong without the extra-record evidence New York now proffers.

Finally, we make one additional point related to the two Executive Orders, the Secretary's Order, and four suspension orders for other projects. *See* New York Mem., Ex. 1 2–3. Setting aside New York's pretext theory, none of those materials are relevant to the merits here. The four other suspension orders, of course, deal with other projects and would add nothing to the Court's assessment of whether BOEM acted arbitrarily or contrary to law in issuing an order for Empire Wind. Similarly, the Executive Orders and Secretary's Order are not factual material BOEM would consider in determining whether the Empire Wind project presented a national security risk justifying the suspension. Nor would they add any value to the Court's assessment of whether the factual information before BOEM reasonably supported the decision. *See Dep't of Commerce*, 588 U.S. at 773 (scope of review under the APA assesses whether there is "a rational connection between the facts found and the choice made"). Federal Defendants do not oppose the parties citing the collection of orders as background, but the materials should not be used to assess whether BOEM acted arbitrarily or contrary to law in issuing the December suspension order for Empire Wind. New York's motion for the Court to consider extra-record evidence should be denied.

## <u>Conclusion</u>

Empire Wind has not shown that BOEM considered the two documents that Empire Wind seeks to add to the record, or that the documents otherwise fall within one of the exceptions to the rule limiting judicial review to the administrative record. Similarly, New York has not made any showing of bad faith, let alone the strong showing necessary for the Court to delve into the mental processes of agency decisionmakers. Plaintiffs' administrative record motions should be denied.

March 12, 2026

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General

JOHN K. ADAMS
Senior Counsel and Chief of Staff

*Kristofor R. Swanson*
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 598-1937
kristofor.swanson@usdoj.gov

*Attorneys for Federal Defendants*