**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMPIRE LEASEHOLDER LLC *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DOUGLAS J. BURGUM,<br>in his official capacity as Secretary of the U.S. Department of the Interior, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00004 (CJN) |
| STATE OF NEW YORK *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DOUGLAS J. BURGUM,<br>in his official capacity as Secretary of the U.S. Department of the Interior, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00071 (CJN)<br>(consolidated) |

## MEMORANDUM OPINION

In December 2025, the Bureau of Ocean Energy Management issued an order to suspend all activities relating to the Empire Wind 1 Project. Plaintiffs filed these actions to challenge that order. But the suspension expired on the order's own terms after 90 days, which means that Plaintiffs' claims are now moot, and no exception to mootness applies. Without a live Article III controversy, the Court lacks jurisdiction and therefore grants Defendants' motion for summary judgment.

## I. Background

The Empire Wind Project involves the development of a commercial wind farm on the outer continental shelf 14 miles off the coast of New York. ECF No. 3 (Complaint) ¶ 28. The project is fully permitted and designed to proceed in two phases. *Id.* ¶¶ 1, 28, 36. The first phase, Empire Wind 1, is closer to shore and will generate 810 megawatts of renewable energy by 2027. *Id.* ¶¶ 1, 28, 32. This output has been committed to the State of New York and will be delivered to an onshore substation in Brooklyn, where it will power more than half a million homes. *Id.* ¶ 28. Construction on Empire Wind 1 began in 2024, with the necessary foundations for the 54 planned wind turbines driven into the seabed by October 2025. *Id.* ¶¶ 30–31.

On December 22, 2025, the Bureau of Ocean Energy Management, an agency within the U.S. Department of the Interior, issued a Director's Order to Empire Offshore Wind LLC (the operator approved to develop Empire Wind 1), ordering that it "suspend all ongoing activities related to the Empire Wind 1 Project on the Outer Continental Shelf for the next 90 days for reasons of national security." *Id.* ¶¶ 3, 23, 47; ECF No. 3-1 at 2 (Director's Order).[1] This order followed the Department's receipt of "new classified information" from a November 2025 "assessment regarding the national security implications of offshore wind projects." ECF No. 3-1 at 2. The Bureau's initial review of that classified information suggested that "the particularized harm posed by [Empire Wind 1]" could only be averted by suspending the project, and the Bureau intended to use the 90-day suspension to "consider all feasible mitigation measures before making a decision as to whether the project must be cancelled." *Id.*

Both the private companies behind Empire Wind 1 (Empire Leaseholder LLC and Empire Offshore Wind LLC) and the public entities involved in it (the State of New York and the New

[1] The Court uses the page numbers generated by CM/ECF.

York State Energy Research and Development Authority) filed lawsuits in January 2026 challenging the Director's Order, and the cases were consolidated. *See* ECF No. 3 (Complaint filed by Empire Leaseholder LLC and Empire Offshore Wind LLC); ECF No. 1 (1:26-cv-00071) (Complaint filed by the State of New York and the N.Y. State Energy Rsch. & Dev. Auth.); ECF No. 14 (1:26-cv-00071) (Order granting Motion to Consolidate). Each complaint sought vacatur of the Director's Order, injunctive relief against its enforcement (or other action based on it), and declaratory relief that it was unlawful.[2] *See* ECF No. 3 at 34–35; ECF No. 1 (1:26-cv-00071) at 35–36. Under the original terms of the Director's Order, the suspension ended after 90 days on March 22, 2026, and although the Director's Order contemplated an extension of that 90-day period, the suspension was not extended. *See* ECF No. 3-1 at 2; *cf.* ECF No. 55-1 at 24; ECF No. 61 at 13–14.

Plaintiffs allege that the Director's Order violated the Due Process Clause, the Outer Continental Shelf Lands Act, and the Administrative Procedure Act, and have asked for summary judgment in their favor. *See* ECF No. 55-1 at 26–56; ECF No. 56 at 33–42. The government has cross-moved for summary judgment in its favor, arguing that the claims are moot and no exception applies, or in the alternative that the government is entitled to summary judgment on the merits. ECF No. 59-1 at 17–22 (mootness), 22–52 (merits).

## II. Legal Standards

Federal courts exercise their judicial power "to decide legal questions only in the context of actual 'Cases' or 'Controversies.'" *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting U.S. Const. art. III, § 2). "An actual controversy must be extant at all stages of review, not merely at

[2] On January 15, 2026, the Court granted the Plaintiff Companies' Motion for Preliminary Injunction, ECF No. 8, which sought to enjoin or stay enforcement of the Director's Order. The government did not appeal that decision.

the time the complaint is filed" because federal courts "may only resolve actual ongoing controversies." *Id.* (internal quotation marks omitted); *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 525 (D.C. Cir. 2025) (internal quotation marks omitted). As a result, federal courts "lose jurisdiction over a case—and must dismiss it as moot—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Crowley*, 143 F.4th at 525 (internal quotation marks omitted). "This happens only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (internal quotation marks omitted).

## III. Analysis

This case is moot. The Director's Order commanded a suspension of all ongoing activities related to Empire Wind 1 "for the next 90 days." ECF No. 3-1 at 2. That time passed more than six months ago, so there is no "actual ongoing controvers[y]" between the Parties. *Crowley*, 143 F.4th at 525 (internal quotation marks omitted). Plaintiffs no longer have any concrete interest in the outcome of this litigation—neither vacatur nor an injunction would afford them any "effectual relief" because the suspension has ended and the Director's Order imposes no further injury on them. *Zukerman*, 961 F.3d at 442 (internal quotation marks omitted). Moreover, because Plaintiffs have attacked "an isolated agency action" (the Director's Order) rather than "some ongoing underlying policy," "the mooting of the *specific* claim moots any claim for a *declaratory judgment* that the specific action was unlawful." *City of Houston v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (emphasis added). Although Plaintiffs "continue to dispute the lawfulness" of the Director's Order, "that dispute is no longer embedded in any actual controversy about [their] particular legal rights." *Alvarez*, 558 U.S. at 93. Instead, it has become "an abstract dispute about the law, unlikely to affect these plaintiffs any more than it affects [anyone else],"

which means it now "falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Id.*

There are two exceptions to the mootness doctrine, but neither applies here. The first exception prevents a party "from manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to return to his old ways." *Alphabet Workers Union-Commc'n Workers of Am., Local 9009 v. NLRB*, 134 F.4th 1217, 1226 (D.C. Cir. 2025) (internal quotation marks omitted). But the voluntary-cessation doctrine does not apply "when the facts do not suggest any arguable manipulation of [the court's] jurisdiction." *Id.* at 1227 (internal quotation marks omitted). At a minimum, the doctrine requires "the decision to stop the disputed activity [to have been] made while the litigation was pending." *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990). That is not the case here, where the Director's Order—as originally issued—set a 90-day limit on the suspension before litigation was initiated. The suspension was not extended, nor was it adjusted in response to this litigation. Instead it expired by its own terms on March 22, and thus the voluntary-cessation doctrine does not apply because "non-reenactment of a one-time condition that expired of its own terms cannot be viewed as cessation of conduct." *Id.*

Plaintiffs insist that the voluntary-cessation exception applies, leaning on the Supreme Court's explanation that avoiding it requires a defendant to carry the "formidable burden of proving that the challenged conduct *cannot* reasonably be expected to recur." ECF No. 61 at 19 (internal quotation marks omitted) (citing *FBI v. Fikre*, 601 U.S. 234, 241–42 (2024)). But the Supreme Court was describing an exception to the usual rule that voluntary cessation *does not* moot a controversy: "a defendant's *voluntary cessation of a challenged practice* will moot a case *only if* the defendant can show that the practice cannot reasonably be expected to recur." *Fikre*,

601 U.S. at 241 (emphasis added) (internal quotation marks omitted). Here, it was Plaintiffs' burden to show that the ordinary voluntary-cessation rule applies—they did not and it does not—not Defendants' burden to show that they qualify for the exception to it. *See Alphabet Workers*, 134 F.4th at 1225 ("The parties opposing mootness . . . have the burden of proving that a mootness exception applies.").

The other exception encompasses "actions capable of repetition yet evading review." *Clarke*, 915 F.2d at 703. This two-pronged test requires the challenged action to be both (1) "capable of repetition" in the sense that there is "a reasonable expectation that the same complaining party would face the same action again," and (2) "evading review" because it is "too short in duration to be fully litigated before its cessation or expiration." *Alphabet Workers*, 134 F.4th at 1226. Although the 90-day length of the suspension here might seem short enough to evade review, the Court of Appeals "has held that agency actions of less than two years' duration" are only too short to be fully litigated if "the short duration is typical of the challenged action." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009). It is not clear whether the short duration of the suspension challenged here meets the bar for typicality. *See Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C. Cir. 1985) (explaining that "the proper inquiry is whether the challenged activity is *by its very nature short in duration*" (alteration adopted and internal quotation marks omitted)). *Compare* ECF No. 59-1 at 20–21 (no typicality), *and* ECF No. 65 at 10–11 (no typicality), *with* ECF No. 61 at 16–17 (typicality).

Regardless, the first prong is not met. Plaintiffs lean heavily on the fact that the Director's Order—according to Defendants' own briefing—"certainly contemplates a future decision," which could end up being "a future suspension order of even longer duration." ECF No. 61 at 17–18 (quoting ECF No. 59-1 at 21). But it is not enough to satisfy the capable-of-repetition prong to

show that the Bureau might order another suspension in the future—"what matters is whether it is reasonably likely that [Plaintiffs] will suffer the same type of legal wrong." *Del Monte*, 570 F.3d at 324. Put differently, the question is whether Plaintiffs face "some likelihood of becoming involved in *the same controversy* in the future." *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 324 (D.C. Cir. 2014) (emphasis added) (internal quotation marks omitted). Whether a future controversy would be the same depends on "the legal questions it presents for decision." *PETA v. Gittens*, 396 F.3d 416, 422–23 (D.C. Cir. 2005). But the challenged suspension was predicated on the Bureau's "initial review of . . . classified information" from a November 2025 Department of Defense "assessment regarding the national security implications of offshore wind projects," and the Bureau's evaluation of that assessment was subject to further consideration (including meeting and conferring with Empire Offshore, which happened). ECF No. 3-1 at 2; *see* ECF No. 3 ¶ 48. The government has explained, and Plaintiffs accept, that "review of national security issues associated with the Empire Project remains ongoing." ECF No. 59-1 at 18; *cf.* ECF No. 61 at 13. That makes all the claims here—that the suspension violated the Due Process Clause, the Outer Continental Shelf Lands Act, and the Administrative Procedure Act—"highly fact-specific." *PETA*, 396 F.3d at 424. And "a legal controversy so sharply focused on a unique factual context would rarely" be "capable of repetition" in the sense required to defeat mootness. *Id.* For example, whether a future suspension was arbitrary and capricious under the Administrative Procedure Act would involve distinct and novel questions if it was based on additional facts and issued after consultation with Plaintiffs. In sum, the challenged suspension is not "capable of repetition" because it is unlikely that a future suspension would present "the same controversy." *Ralls Corp.*, 758 F.3d at 324 (internal quotation marks omitted).

Finally, Plaintiffs try to salvage their claims by making a distinction between the Director's Order itself and the suspension it mandated, arguing that the order "did not expire when the initial 90-day suspension period ended." ECF No. 61 at 13. They suggest that their claims are still live because the Bureau "has neither revoked [n]or rescinded" the order.[3] *Id.* at 14. But in the context of prospective relief (the only kind Plaintiffs have asked for), the Court of Appeals has explained that a challenge to agency action becomes moot when the action expires and has "no continuing effect" because it is impossible at that point "to grant any effectual relief." *Am. Forest Res. Council v. Williams*, 96 F.4th 417, 444 (D.C. Cir. 2024) (quoting *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019)). Plaintiffs argue that *American Forest* is distinguishable because they are challenging the factual determinations the Director's Order was predicated on and participating in an ongoing review process. ECF No. 61 at 15. But neither point shows how this Court can "grant any effectual relief" now that the suspension has ended. *Am. Forest*, 96 F.4th at 444 (internal quotation marks omitted). Whatever factual determinations the Director's Order relied on have no continuing effect on Plaintiffs, and the ongoing review process only demonstrates, as explained above, that this controversy is unlikely to be repeated in the future.

[3] Plaintiffs suggest that the suspension could still be "extended" despite having already "expired." *See* ECF No. 61 at 19 (arguing that the Director's Order "nowhere contemplates that . . . an extension must occur within the first 90-day period"). The Court is skeptical and agrees with Defendants' argument that "any potential future action based on [the Bureau's] ongoing review would be a new agency action, not an extension of the now-expired Suspension Order." ECF No. 59-1 at 18; *cf. PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014) ("[T]here is no point in this Court issuing an injunction prohibiting the extension of permits which already have not been extended.").

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' Cross-Motion for Summary Judgment, ECF No. 59. The Court will issue an Order contemporaneously with this Memorandum Opinion.

DATE: September 30, 2026

CARL J. NICHOLS
United States District Judge